PEN CARBON MANIFOLD COMPANY, respondent,

*v.*

JAMES E. TOMNEY and another, appellants.

[Submitted November Term, 1918.  Decided March 3d, 1919.]

1. An agreement made in settlement of litigation, to preserve secrets as to certain machinery and processes, will be enforced.

2. Where a bill is filed to enforce an agreement to preserve secrets, praying for an injunction against disclosure of secrets, a decree enjoining the disclosure of any information relative to all machines used or designed for use in the business, and not limited to the secrets protected by the contract, goes too far.

3. In order to protect a complainant's rights under an agreement to protect secret processes and machines, it is proper to require the defendant to deliver to the complainant patterns, photographs, drawings, designs, parts of machines, tangible and informative writings relative to the machines, their use or operation, or any secret methods employed in the construction.

On appeal from a decree of the court of chancery.

*Mr. Alfred S. March* and *Mr. J. Benjamin Glueckfield,* for the complainant-respondent.

*Mr. Edmund A. Hayes* and *August C. Streitwolf,* for the defendants-appellants.

The facts sufficiently appear in the vice-chancellor's opinion.

The opinion of the court was delivered by

SWAYZE, J.

The rights of the parties grow out of the contract of December 22d, 1914.   The validity of the restraint imposed thereby depends on whether it was no more extensive than was reasonably required to protect the interest of the party in favor

of whom it was given and not so large as to interfere with the interests of the public. *Trenton Potteries Co.* v. *Oliphant, 58 N. J. Eq. 507; Taylor Iron and Steel Co.* v. *Nichols, 73 N. J. Eq. 685.* To determine the validity of the restraint we must bear in mind the interest to be protected by the contract. The object was to settle a litigation between the parties, and to secure the complainants in the enjoyment of secret processes and secret machines. The interest to be protected was the maintenance of secrecy, and it was nothing more. To secure secrecy the contract properly provided that the ten two-color ribbon machines should be made in secret and that certain other machines should be kept private and secret at all times. But the other machines thus referred to could be only machines based upon or embodying some secret. Only to such machines could the provision against divulging without consent of the complainants in writing under seal apply. If the contract was meant to be broader and to restrain the use or manufacture of machines which rested upon or embodied no secrets, it would go farther than the contract intended, and farther than the law permits. To guard against so broad a construction and safeguard its own validity, the contract provided that its true object was to settle the rights of the present complainant to the machines, patterns, formulas, processes, &c., and "to declare the same as the secret property of the said party of the second part, together with the special rights to use the same under secret methods and processes." Thus interpreted, and limited to the protection of the complainant's secrets, we think the contract valid. It follows that the complainant was entitled to have it enforced.

By the original bill in the present suit the complainant made it clear that it was seeking only the protection of secret processes and special and secret machinery, and of the secret and special designs of Archibald. Its complaint was that the defendant James E. Tomney had imparted important information relative to all the secret formulas, designs and processes mentioned to his son, Charles, the co-defendant, and that they were engaged in the construction of machines from the complainant's secret and exclusive designs and maps, and were imparting information relative to the construction of important parts of the

secret machines to persons not entitled to receive the same. The bill prayed for restraint against transferring or disposing any of certain articles mentioned, against constructing or using any ribbon machines or parts thereof as described in the bill and annexed schedule, and from imparting and divulging any information concerning the articles and things mentioned, and from using or employing any of said formulas, methods or processes for the manufacture of inked ribbons and accessories. After the dismissal of the bill, what is called an amended, but is really a supplemental bill, was filed. This also counts upon the complainant's secrets and sets forth by name eight different machines which the complainant is using secretly and exclusively, and prays for protection as to those machines.

If the decree had been limited to an injunction against disclosing secrets or manufacturing or disposing of machines based on or embodying the complainant's secrets, thus enforcing the contract in accordance with its necessary construction, we should have had no criticism to make. By a common oversight, the language of the decree was broader than the contract or the bill justified. As we read it, the defendants are enjoined from disclosing any information relative to the design, construction, use and operation, not only of the machines specifically mentioned, but any and all other machines, &c., used or designed for use in the inked ribbon, carbon and stencil industries, and from designing, constructing or producing any machines designed for use in the business named. The decree, therefore, goes too far and must be modified. Whether the "hand and type stencil machines" mentioned in the decree are within any of the classes as set forth in the bill is not clear. Probably counsel can agree as to that.

The defendants complained that they are required to deliver to complainants all patterns, photographs, drawings or designs of machines, all raw or finished parts of machines, all tangible and informative writings relative to the machines, their use or operation, or to any of the secret methods employed in construction. We agree with the vice-chancellor that this is necessary to the proper protection of the complainant's secrets, and we see no objection to requiring the defendant to perform what the decree directs.

The decree is modified and the record remitted to the court of chancery. Neither party is entitled to costs in this court.

*For affirmance*—None.

*For reversal*—None.

*For modification*—THE CHIEF-JUSTICE, SWAYZE, TREN-CHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.